# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS (WORCESTER)

|  |  |
|---|---|
| **WESTBOROUGH SPE LLC,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**TOWN OF WESTBOROUGH et al,**<br><br>    **Defendants.** | **Case No. 4:23-cv-12017-MRG** |

## <u>TRUSTEE'S RESPONSE REGARDING ORDER TO SHOW CAUSE</u>

Jonathan R. Goldsmith, the duly appointed Chapter 7 Trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Westborough SPE LLC (the "Plaintiff" or the "Debtor") submits this response to the Court's *Order to Show Cause* [Dkt. No. 12] (the "Show Cause Order") and respectfully requests that this Court (i) continue to stay all activity in this case due to the Bankruptcy Court-approved Settlement Agreement (as defined and discussed below) and (ii) set a deadline of March 16, 2026 for the Trustee to file a status report with this Court, unless the case has been dismissed pursuant to the Settlement Agreement (as defined below). As discussed further in detail below, the Trustee has negotiated a resolution of this case as part of a global, multi-party settlement and has obtained Bankruptcy Court approval of that settlement. The Trustee (and the other parties to the settlement) require additional time to implement all provisions of the Bankruptcy Court-approved settlement. Once fully implemented, however, the settlement provides that this case will be dismissed. **Dismissal of this case prior to full implementation of the Bankruptcy Court-approved settlement, however, could deprive the Plaintiff/Debtor, its creditors, and other interested parties from realizing any value from an asset of the bankruptcy estate.**

The Trustee further states as follows:

1.      On August 31, 2023 (the "Petition Date"), certain creditors of the Plaintiff filed an involuntary petition under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), which case is pending before the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court") as Case No. 23-40709-CJP (the "Bankruptcy Case").

2.      On October 11, 2023, the Bankruptcy Court entered an Order for Relief in the Bankruptcy Case and the case remains a Chapter 7 case at this time.

3.      On October 12, 2023, the United States Trustee appointed Jonathan R. Goldsmith as Chapter 7 trustee and the Trustee remains as Trustee at this time.

4.      On August 31, 2023, the Plaintiff filed a Suggestion of Bankruptcy [Dkt. No. 11] in this case (the "Federal Action").[1]

5.      During the pendency of the Bankruptcy Case, the Trustee has worked to liquidate and maximize all assets of the Debtor, which assets include, without limitation, all claims and causes of action including the claims asserted by the Debtor as plaintiff in this Federal Action.

6.      In connection with the Trustee's efforts to liquidate the Debtor's assets, on November 3, 2025, the Trustee entered into the multi-party *Settlement Agreement and Mutual Release* (the "Settlement Agreement") which (i) resolves multiple pending litigation matters, including those to which the Debtor is a party which, among other things, directs the dismissal of the within Federal Action once fully implemented and (ii) provides for the sale of real property located at 231 Turnpike Road, Westborough, Massachusetts (the "Property"). A copy of the Settlement Agreement is attached hereto as **<u>Exhibit A</u>**.

---

[1]  The Settlement Agreement (as defined herein) refers to the within case as the "Federal Action" and, therefore, the Trustee has used that definition herein.

7.      On November 4, 2025, the Trustee filed motions with the Bankruptcy Court seeking approval of the Settlement Agreement (the "Settlement Motion") and the proposed sale of the Property (the "Sale Motion").

8.      On December 24, 2025, after conducting evidentiary hearings on the Sale Motion and the Settlement Motion, the Bankruptcy Court entered the (i) *Order Granting Trustee's Motion for Entry of an Order Approving and Authorizing Settlement Agreement and Mutual Release Pursuant to Fed. R. Bankr. P. 9019, as Supplemented* (the "Sale Order") [Bankruptcy Case Dkt. No. 1038] and (ii) *Order (I) Authorizing the Private Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Approving Purchase and Sale Agreement; (III) Authorizing Disbursements of Sale Proceeds Pursuant to Settlement Agreement and Mutual Release; and (IV) Granting Related Relief* (the "Settlement Approval Order," together with the Sale Order, the "Orders") [Bankruptcy Case Dkt. No. 1037].

9.      The Orders, among other things, approve the sale of the Plaintiff's Property to an agreed-upon buyer and authorize the Trustee to implement and attend to all provisions of the Settlement Agreement. Copies of the Sale Order and Settlement Approval Order are attached hereto as **Exhibit B** and **Exhibit C**, respectively.

10.      In accordance with the Settlement Agreement, after the sale of the Property closes and the Trustee makes the disbursements required by the Orders, the Trustee will execute and file a "Notice of Voluntary Dismissal" of this Federal Action, the form of which is attached to the Settlement Agreement as Exhibit B thereto.

11.      Although the Settlement Agreement is approved, the Trustee requires additional time to consummate the sale of the Property and to comply with the terms of the Settlement

Agreement pursuant to the Orders. Once the Trustee has done so, the Trustee will dismiss this case as required by the Settlement Agreement. Until that time, however, the Debtor's claims and causes of action in this Federal Action are assets of the bankruptcy estate which the Trustee is required to liquidate and maximize for the benefit of all creditors. The Trustee determined that the best result for the bankruptcy estate and its creditors and interested parties is that the Trustee settle this Federal Action pursuant to the Settlement Agreement. Per the Orders, the Bankruptcy Court has approved the Trustee's judgment and authorized the Trustee's intended actions.

12.     Based on the foregoing, the Trustee submits that cause does not exist to dismiss this case for lack of prosecution. Further, the Trustee respectfully submits that cause exists to continue to stay all activity in this case and allow for the implementation of the Bankruptcy Court-approved Settlement Agreement.

**<u>REQUESTED RELIEF</u>**

13.     The Trustee requests that this Court continue to stay all activity in this Federal Action through, at least, March 16, 2026. The Trustee anticipates that by that date the sale of the Property is likely to have closed and that the parties to the Settlement Agreement are likely to have fulfilled all obligations thereunder including the dismissal of this Federal Action.

14.     If the Trustee has not yet dismissed this Federal Action by March 16, 2026, the Trustee will file by that date a Status Report to update this Court on the status of the implementation of the Bankruptcy Court-approved Settlement Agreement and, if necessary, will request further relief of this Court.

WHEREFORE, the Trustee respectfully (i) provides this response to the Show Cause Order, (ii) requests that this Court continue to stay all activity in this case for the reasons set forth above, (iii) requests that this Court set a deadline of March 16, 2026 for the Trustee to file a Status Report with this Court, unless the Trustee has previously dismissed this case, and (iv) requests that this Court grant such other and further relief as is just.

Respectfully submitted,

**Jonathan R. Goldsmith,**
**Chapter 7 Trustee of**
**Westborough SPE LLC**

by his counsel,

_____/s/ Angelina M. Savoia_____
Christine E. Devine, BBO #566990
Angelina M. Savoia, BBO #715690
Nicholson Devine LLC
21 Bishop Allen Drive
Cambridge, MA 02139
Phone:  857-600-0508
Email:  angelina@nicholsondevine.com

Dated: December 29, 2025

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS (WORCESTER)**

| | |
|---|---|
| **WESTBOROUGH SPE LLC,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 4:23-cv-12017-MRG** |
| **TOWN OF WESTBOROUGH et al,** | |
| **Defendants.** | |

## CERTIFICATE OF SERVICE

The undersigned, Angelina M. Savoia, hereby certifies that on this day I caused a copy of the following document to be served on all parties listed on the attached Service List in the manner noted thereon:

- **TRUSTEE'S RESPONSE REGARDING ORDER TO SHOW CAUSE.**

Dated: December 29, 2025

/s/ Angelina M. Savoia, Esq.
Angelina M. Savoia, BBO #715690
Nicholson Devine LLC
21 Bishop Allen Drive
Cambridge, MA 02139
Phone: 857-600-0508
Email: angelina@nicholsondevine.com

<u>Service List</u>

The following list of registered participants as identified on the NEF have received electronic notice via the Court's CM/ECF filing system:

- **Scott A. Schlager**    scott.schlager@lockelord.com


The following attorneys have received courtesy copies via as noted:

Roger Smerage, Esq.                 (counsel to Town of Westborough and its Select Board in
rsmerage@k-plaw.com                 the Bankruptcy Case)
                                    Via Email


Brian Lee, Esq.                     (counsel to Peter Blaustein in the Bankruptcy Case)
BLee@nutter.com                     Via Email


Stephen Gordon, Esq.                (counsel to Nathanson & Goldberg in the
sgordon@gordonfirm.com               Bankruptcy Case)
                                    Via Email

# EXHIBIT A

FINAL

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") is made between and among Westborough SPE LLC ("SPE"), through Jonathan Goldsmith, as its Chapter 7 Trustee ("Trustee"); the Town of Westborough ("Town"); Ferris Development Group, LLC ("Ferris"); Lax Media LLC and Lax Media MA LLC (together, "Lax"); and Durgaprasad Nagalla and Venkatesh Mohanraj, Trustees of The MobileStreet Trust, u/d/t dated December 11, 2014, recorded with the Worcester Registry of Deeds in Book 53141, Page 193 ("MobileStreet") (each a "Party" and collectively the "Parties") as of the date on which the last Party signs the Agreement.

WHEREAS, in 1997, SPE acquired real property located at 231 Turnpike Road, Westborough, Massachusetts (the "Property");

WHEREAS, the Property is subject to a Declaration of Reciprocal Covenants, Easements and Restrictions concerning abutting real property owned by MobileStreet, recorded with the Worcester County Registry of Deeds at Book 18745, Page 313 (the "Reciprocal Covenants"), which Reciprocal Covenants run with the Property;

WHEREAS, on December 28, 2018, the Town recorded an instrument of taking on the Property and all improvements thereon pursuant to G.L. c. 60, §§ 53-54, as a result of unpaid FY 2018 taxes in the amount of $106,944.99;

WHEREAS, on July 8, 2019, the Town filed a tax title foreclosure action with respect to the Property in the Massachusetts Land Court, Town of Westborough v. Westborough SPE LLC, et al. (Mass. Land Ct. No. 19 TL 000768) (the "Tax Foreclosure Action");

WHEREAS, on January 5, 2022, the Land Court entered judgment in favor of the Town and against SPE in the Tax Foreclosure Action (the "Foreclosure Judgment");

WHEREAS, on May 26, 2022, the Town issued a request for proposals for the purchase and redevelopment of the Property (the "RFP");

WHEREAS, in response to the RFP, the Town received proposals for purchase of the Property, including, among others, proposals from Ferris and Lax;

WHEREAS, the Town, by and through its Select Board, selected Lax's proposal to purchase the Property;

WHEREAS, in November 2022, Ferris filed suit against the Town and Lax in Massachusetts Superior Court for breach of implied contract, declaratory judgment, and injunctive relief as a result of the Town's selection of Lax's proposal, Ferris Development Group, LLC v. Town of Westborough, et al., Mass. Superior Court Case No. 2285CV0128 (the "30B Action");

WHEREAS, on January 4, 2023, a Motion to Vacate the Tax Title Foreclosure Judgment in the Tax Foreclosure Action was filed in the Land Court on behalf of SPE (the "Motion to Vacate"), which Motion to Vacate the Town opposed, on grounds including, but not limited to,

that the Town disputed whether SPE had been properly revived and had the ability to file court papers;

WHEREAS, the law firm of Nathanson & Goldberg, P.C. ("N&G") subsequently appeared in the Tax Foreclosure Action to represent SPE and prosecute the Motion to Vacate;

WHEREAS, on August 31, 2023, N&G commenced a civil action on behalf of SPE against the Town and the members of its Select Board arising out of the judgment entered in the Tax Foreclosure Action and the Town's subsequent efforts to sell the Property, Westborough SPE, LLC v. Town of Westborough. et al., U.S. Dist. Ct. (D. Mass.) Case No. 4:23-cv-12017 (the "Federal Action");

WHEREAS, on August 31, 2023, before the Land Court adjudicated the Motion to Vacate, N&G and MobileStreet filed an involuntary Chapter 7 petition (the "Involuntary Petition") in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court") against SPE, commencing the Chapter 7 Bankruptcy Case, In re Westborough SPE, LLC, U.S. Bankr. Ct. (D. Mass.) Case No. 23-40709 (the "Bankruptcy Case");

WHEREAS, on September 5, 2023, an answer consenting to the Involuntary Petition was filed on behalf of SPE;

WHEREAS, on October 3, 2023, the Town filed a Motion for Relief from Automatic Stay (the "Motion for Relief") in the Bankruptcy Proceeding, in which the Town, inter alia, contended that the Property was no longer an asset of SPE;

WHEREAS, on October 11, 2023, the Bankruptcy Court entered an Order of Relief in the Bankruptcy Case, after no party filed an objection to the entry of an Order for Relief;

WHEREAS, on October 12, 2023, the Bankruptcy Court appointed the Trustee to, among other things, administer the assets and liabilities of SPE (the "Bankruptcy Estate");

WHEREAS, Ferris, N&G, and MobileStreet all filed proofs of claim in the Bankruptcy Case seeking distributions from the Bankruptcy Estate;

WHEREAS, on January 16, 2024, the Town filed a Motion to Dismiss the Bankruptcy Case pursuant to 11 U.S.C. § 707(a) (the "Motion to Dismiss");

WHEREAS, the Trustee and other parties in interest filed objections to the Motion to Dismiss;

WHEREAS, on January 17, 2024, the Trustee removed the Tax Foreclosure Action the Bankruptcy Court initiating an adversary proceeding, Town of Westborough v. Westborough SPE LLC, U.S. Bankr. Ct. (D. Mass.) Case No. 24-ap-04006;

WHEREAS, on February 7, 2024, the Town filed a Motion to Remand and/or Abstain from Hearing the Tax Foreclosure Action (the "Motion to Remand" and, collectively with the Motion for Relief and Motion to Dismiss, the "Town's Motions");

WHEREAS, the Town's Motions remain pending before the Bankruptcy Court;

WHEREAS, on January 30, 2025, the Trustee filed a Complaint against the Town seeking to avoid the Foreclosure Judgment and recover the Property pursuant to 11 U.S.C. §§ 544, 548, 550, and 551, and M.G.L. c. 109A, or, alternatively, for damages caused by the Town's alleged violation of the Debtor's Fifth Amendment and Eighth Amendment rights under the United States Constitution, or, alternatively, for damages pursuant to M.G.L. c. 60, § 64A, or, alternatively, declaratory judgment that the Town is required to comply with M.G.L. c. 60 as amended to add § 64A, effective as of November 1, 2024 (the "Avoidance Action");

WHEREAS, prior to the date by which the Town was required to answer or otherwise file a response in the Avoidance Action, the Trustee and the Town agreed to (i) extend the deadline for the Town to respond to the Avoidance Action, (ii) allow the Trustee to market the Property for sale by the Trustee to determine whether the Trustee would be able to identify a purchaser willing to purchase the Property in an amount deemed sufficient by the Trustee, and (iii) determine if the Parties would be able to enter an agreement resolving all disputes;

WHEREAS, throughout the Spring of 2025, the Trustee marketed the Property and solicited offers to purchase the Property;

WHEREAS, Bochasanwasi Shree Akshar Purushottam Swaminarayan Sanstha – Northeast, a Texas corporation ("BSAPSS") submitted an offer to purchase the Property for a purchase price of $5,111,111.11, which the Trustee has determined is the highest and best offer of all offers submitted;

WHEREAS, contemporaneously herewith, BSAPSS and the Trustee have entered into a Purchase and Sale Agreement (the "PSA") pursuant to which, subject to Bankruptcy Court approval, the Trustee will sell the Property to BSAPSS;

WHEREAS, the Parties have agreed to resolve the multiple disputes among and between them concerning the Property, including the resolution of all disputes between SPE and the Town;

WHEREAS, this Agreement is subject to and contingent upon (i) entry of an order by the Bankruptcy Court approving this Agreement and authorizing its provisions (the "Approval Order"), (ii) entry of an order by the Bankruptcy Court approving and authorizing the sale of the Property to BSAPSS pursuant to the PSA, and (iii) the Trustee and BSAPSS closing on the sale of the Property pursuant to the PSA (the "Sale");

NOW, THEREFORE, in consideration of the promises and covenants set forth below, and for other good and valuable consideration as set forth in this Agreement, the Parties agree as follows:     .

1.      <u>Motion to Approve Settlement Agreement</u>: Within five (5) days after execution of this Agreement by the last Party to execute this Agreement, the Trustee will file a motion to approve the settlement pursuant to Fed. R. Bankr. P. 9019 (the "Motion to Approve Settlement"). The Motion to Approve Settlement shall expressly seek a final order from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(l) as this Agreement seeks to dispose of all claims and disputes

between SPE and the Town concerning the Property. Assuming the Motion to Approve
Settlement is consistent with the terms of this Agreement, none of the Parties shall object to the
Motion to Approve Settlement in any way. Notwithstanding the foregoing, however, the Trustee
shall be entitled to act in any manner which he deems appropriate to satisfy his obligations as a
fiduciary of the Bankruptcy Estate and the Trustee agrees to provide written notice in advance to
the Parties regarding any such action to the extent not contemplated by this Agreement. Further,
in connection with the Motion to Approve Settlement, the Trustee agrees to seek no relief that
contradicts, contravenes, or differs from the express terms of this Agreement.

2.     Motion to Sell Property to BSAPSS:  Within five (5) days after execution of this
Agreement by the last Party to execute this Agreement, the Trustee will file a motion to approve
and authorize the Sale in accordance with the PSA (the "Sale Motion"). Subject to section 5 of
this Agreement, the Sale Motion will seek authority to sell the Property to BSAPSS free and
clear of liens, claims, encumbrances, and interests pursuant to 11 U.S.C. § 363(f), except that the
Property will be sold subject to (i) a permanent trail easement on the Property in the form
attached hereto as Exhibit A; and (ii) the Reciprocal Covenants, as modified by section 4 of this
Agreement. No counter-offers for the Property will be solicited.

3.     Settlement Agreement Contingent on Approval of Sale Motion and Sale Closing:
This Settlement Agreement is conditioned upon Bankruptcy Court approval of the Sale Motion
and, further, on the sale of the Property to BSAPSS on the terms set forth in the PSA. The
Trustee will request that the Bankruptcy Court hear and consider the Motion to Approve
Settlement and the Sale Motion contemporaneously. The Trustee shall be authorized to close the
Sale on or after the later of (a) the expiration of the 14-day appeal period of the entry of an order
allowing the Motion to Approve Settlement (the "Approval Order"), (b) compliance with all of
the provisions of this Agreement, and (c) the expiration of the 14-day appeal period of the entry
of an order allowing the Sale Motion (the "Sale Order").

4.     MobileStreet Consent to Amend Reciprocal Covenants: In consideration of (a)
payment of the $200,000 pursuant to Section 6 of this agreement (the "Use Modification
Payment") and (b) BSAPSS's agreement to fully and timely comply with its obligations as
Property owner subject to the Reciprocal Covenants, MobileStreet shall execute an amendment
to the Reciprocal Covenants which will allow for use of the Property as a "house of worship"
which use is not currently an allowable use. MobileStreet agrees to execute any reasonable
documentation (in recordable form to be recorded at sale closing) which BSAPSS may
reasonably request to document the amendment to the Reciprocal Covenants to allow the use of
the Property as a "house of worship" including, without limitation, engaging in daily worship,
providing youth activities, hosting dining activities with a commercial kitchen, maintaining
priest/caretaker residences, hosting assemblies and events, and having office and classroom
space on the first and second floor of the Property.

BSAPSS understands and agrees that certain necessary maintenance obligations arising
under the Reciprocal Covenants prior to the Sale Closing have been deferred and must be
completed (the "Deferred Maintenance"). Notwithstanding the provisions of §3.1 of the
Reciprocal Covenants, MobileStreet, as "operator" (directly and/or through its Managing Agent)
agrees to work in good faith with BSAPSS to determine the actual scope of Deferred

Maintenance, obtaining competitive pricing and establishing reasonable timelines for commencing and completing the Deferred Maintenance.

5. <u>Vacating Town Foreclosure Judgment</u>: With respect to the Foreclosure Judgment, the Trustee and the Town agree that:

a. Within three (3) days of the expiration of the 14-day appeal period of the entry of the Approval Order, the Town and Trustee shall execute and file in the Tax Foreclosure Action a stipulation that (i) the Town conditionally vacates the Foreclosure Judgment solely for the purposes of permitting the Trustee to sell the Property to BSAPSS, (ii) the Trustee conditionally withdraws the Motion to Vacate for the same purpose, and (iii) is contingent upon the Bankruptcy court's entry of the Sale Order.

b. Upon expiration of the 14-day appeal period of the entry of the Approval Order, the Town shall prepare, execute, and deliver to the Trustee, any additional duly authorized documentation satisfactory to BSAPSS and its title insurer, which said title insurer deems necessary to reflect vacatur of the Foreclosure Judgment as a matter of record title, which documentation the Trustee will hold in escrow pending closing the sale to BSAPSS;

c. The Trustee shall be authorized to record any additional documents necessary to reflect vacatur of the Foreclosure Judgment contemporaneous with (i) closing the Sale of the Property to BSAPSS and (ii) distributing to the Town the portion of the proceeds of the sale to be paid to the Town pursuant to section 6(a) of this Agreement.

d. If, for any reason, the sale of the Property to BSAPSS does not take place, the Foreclosure Judgment in the Tax Foreclosure Action shall not be vacated pursuant to this Agreement and the Trustee shall return to the Town the documents referenced in section 5(b) above.

e. In the event that a stay of the Bankruptcy Court's entry of the Approval Order or Sale Order is entered, the time periods set forth in this section 5 shall be paused while the stay is in place.

6. <u>Distribution of Sale Proceeds</u>: The Trustee shall obtain an Order approving the Sale Motion which shall authorize the Trustee to distribute the proceeds from the Sale as follows:

a. <u>Town of Westborough</u>: The Town shall be entitled to be paid $1,640,000.00 (the "Town Payment") from the sale proceeds, which amount the Town and the Trustee stipulate and agree is the amount due and owing to the Town (including legal fees) as a result of the tax lien and tax taking process based on the Trustee's review of materials the Town has provided to the Trustee. The Town Payment shall be paid contemporaneous with the Sale closing, provided that the Town shall be paid before any other creditors of SPE. Upon payment of the Town Payment, the Town shall have no further claim against SPE or the Bankruptcy Estate.

Case 23-40709    Doc 1966    Filed 11/04/25    Entered 11/04/25 14:44:11    Page 14 of 63
Case 23-40709-MRC    Document 16 Part 1    Filed 11/04/25    Page 6 of 30

FINAL

b.      MobileStreet: From the sale proceeds, MobileStreet shall be entitled to receive the following (i) payment of $200,000 (i.e., the Use Modification Payment previously defined) in return for amending the Reciprocal Covenants to allow for use of the Property as a "house of worship" and (ii) payment of $556,763 (the "MobileStreet Maintenance Payment"), which amount the Trustee and MobileStreet (inclusive of all legal fees) stipulate and agree is the amount due and owing to MobileStreet on account of all obligations owing under the Reciprocal Covenants through and including December 31, 2025. The Use Modification Payment and the MobileStreet Maintenance Payment are referred to together herein as the "Total MobileStreet Payment." The Trustee shall pay the Total MobileStreet Payment by check payable to the Law Office of Lenard B. Zide, Esq., 420 Boylston Street, 4th Floor, Boston MA 02116, within ten (10) days after the Sale closing. MobileStreet agrees that any and all expenses or obligations MobileStreet has incurred and expects to incur under the Reciprocal Covenants through and including December 31, 2025 are fully quantified and set forth in this paragraph. To the extent that MobileStreet has additional claims under the Reciprocal Covenants, for the period of January 1, 2026 through the Sale closing date, MobileStreet shall be entitled to file a request for payment of administrative expense and the Trustee reserves all rights regarding any such request. Upon payment of the Total MobileStreet Payment, MobileStreet shall have no further claim against the Town or, subject to the provisions of this paragraph, SPE, or the Bankruptcy Estate.

c.      Ferris: Ferris shall be entitled to receive payment of $100,000 ("Ferris Payment") from the sale proceeds, which amount the Trustee and Ferris stipulate and agree represents a reasonable settlement of any and all claims that Ferris may have against the Town, the Estate and other Parties to this Agreement. The Trustee shall pay the Ferris Payment by check payable to Ferris Development Group, 118 Turnpike Rd., Suite 300, Southborough, MA, 01772, within ten (10) days after the Sale closing. The Ferris Payment shall be in addition to, and not in lieu of, Ferris's $10,000 proof of claim filed in the Bankruptcy Proceeding, which shall be deemed allowed upon approval of this Agreement and paid from the Bankruptcy Estate in due course. Upon payment of the Ferris Payment Ferris shall have no further claim against the Town, SPE, or the Bankruptcy Estate, with the exception of Ferris's proof of claim against only the Estate.

d.      Lax: Lax shall be entitled to receive payment of $100,000 ("Lax Payment") from the sale proceeds, which amount the Trustee and Lax stipulate and agree represents a reasonable settlement of any and all claims that Lax may have against the Town, the Estate and other Parties to this Agreement. The Trustee shall pay the Lax Payment by check payable to Lax Media LLC and shall deliver same c/o Christopher Mulhern, Esq., Law Office of Christopher M. Mulhern, Inc., 100 Centerville Road, Suite 1, Warwick, Rhode Island, 02886, within ten (10) days after the Sale closing. Upon payment of the Lax Payment, Lax shall have no further claim against the Town, SPE, or the Bankruptcy Estate.

7.     <u>Non-Disparagement Provisions</u>: Ferris and its principals agree not to make any disparaging statements regarding the Town, or any elected or appointed official or any employee thereof, concerning the solicitation and evaluation of proposals submitted in response to the RFP, sale of the Property pursuant to the PSA, this Agreement, or any proceedings relative any of the foregoing. The Town and its elected or appointed officials or employees agree not to make any disparaging statements regarding Ferris, its officers, directors, or employees concerning the solicitation and evaluation of proposals submitted in response to the RFP, sale of the Property pursuant to this Agreement, the PSA, or any proceedings relative to any of the forgoing.

8.     <u>Intentionally Deleted</u>.

9.     <u>Dismissal of Litigation</u>: Upon the later of (i) ten (10) days after the Sale has closed or (ii) receipt of the respective disbursements provided for in Section 6 above following the Sale closing, the Parties shall take the following actions regarding pending litigation:

    a.     <u>Federal Action</u>: The Trustee will execute and file a voluntary notice of dismissal with prejudice in the form attached hereto as <u>Exhibit B</u> in Federal Action;

    b.     <u>Tax Foreclosure Action</u>: The Town will execute and file a voluntary notice of dismissal with prejudice in Tax Foreclosure Action;

    c.     <u>30B Action</u>: Ferris, the Town, and Lax will execute and file the voluntary stipulation of dismissal with prejudice in the form attached hereto as <u>Exhibit C</u> in the 30B Action; and

    d.     <u>Avoidance Action</u>: The Trustee and Town will execute and file the voluntary stipulation of dismissal with prejudice in the form attached hereto as <u>Exhibit D</u> in the Avoidance Action; and

10.     <u>Resolution of Town's Motions</u>: Within ten (10) days after the closing of the Sale and the payment of the Town Payment, the Town shall file notice of withdrawal of the Town's Motions in the Bankruptcy Court.

11.     <u>Mutual Release</u>: The Trustee on behalf of SPE, the Town, MobileStreet, LAX, and Ferris, their members, managers, officers, directors, shareholders, partners, principals, agents, servants, employees, representatives, attorneys, affiliates, subsidiaries, predecessors, successors, insurers, sureties, heirs and assigns, executors and administrators, past and present (the "Releasors"), hereby each release and forever discharge each other, their respective officers, directors, shareholders, partners, principals, agents, servants, employees, representatives, attorneys, successors, assigns and affiliates, subsidiaries, predecessors, successors, insurers, sureties, heirs and assigns, executors and administrators, past and present and each of them (the "Releasees"), of and from any and all claims, actions, causes of action, debts, demands, costs, charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, and expenses (including attorneys' fees and costs actually incurred), whatsoever, of every name and nature, both in law and equity or otherwise, known or unknown, arising out of or related to the Property, at any time through the Effective Date of this Agreement, which the Releasors, or any one or more of them, had or now have, from the beginning of the world to the

Effective Date, specifically including, without limitation, all claims that could have been raised in the Tax Foreclosure Action, the 30B Action, the Federal Action, the Avoidance Action, or the Bankruptcy Case, except as set forth herein with respect to any request for payment of administrative claim which MobileStreet may file in the Bankruptcy Case. The Trustee reserves all rights regarding any proof of claim or request for payment of administrative claim which MobileStreet may file.

12.    <u>Zoning and Permitting</u>: Nothing in this Agreement shall be construed as a waiver of any zoning, permitting, or other requirements concerning the Property under the Town's Bylaws or other applicable law. BSAPSS shall be required to satisfy any zoning, permitting, or other legal requirements necessitated by a particular use of the Property.  Notwithstanding the foregoing, the Town acknowledges BSAPSS's intended use of the Property as a house of worship is an allowed use as a matter of right under G.L. c. 40A, § 3 and the Town will not object to such use under Section 5.1 of the Town's Zoning Bylaws.  The Town will reasonably cooperate with BSAPSS in BSAPSS's timely receipt of any and all redevelopment permits and approvals that may be required for BSAPSS's intended renovations of the Property.

13.    <u>No Admission</u>: This Agreement shall not constitute or be construed or deemed to be evidence of any admission or concession of liability by any of the Parties.

14.    <u>Entire Agreement</u>: This Agreement contains the entire agreement among the Parties with regard to the matters set forth herein. There are no other understandings or agreements, verbal or otherwise, in relation thereto, among the Parties except as expressly set forth herein. This Agreement may not be changed, modified, supplemented, or terminated except by a written agreement executed by the Parties.

15.    <u>Representation by Counsel</u>: By entering into this Agreement, the Parties represent that they have completely read all terms hereof, that they have been represented by counsel of their choice, and that such terms are fully understood and voluntarily accepted by them.

16.    <u>Governing Law</u>: This Agreement shall be construed and interpreted in accordance with the laws of the Commonwealth of Massachusetts.

17.    <u>Jurisdiction</u>: The Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, this Agreement, including but not limited to any claims that this Agreement has been breached by one of the Parties.

18.    <u>Miscellaneous</u>: The Parties agree to cooperate fully and to execute any and all necessary supplementary documents and to take all additional actions that may be necessary or appropriate to give full force and effect to the intent of this Agreement, which are not inconsistent with its terms. This Agreement has been negotiated by the Parties and shall be construed as drafted by all Parties.

19.    <u>Execution</u>: This Agreement may be executed by facsimile or .pdf in one or more counterparts, each of which shall be deemed an original.

[Signatures on following page]

FINAL

IN WITNESS WHEREOF, the parties below have hereunto set their hands and seals, the dates below written.

| | |
|---|---|
| WESTBOROUGH SPE, LLC<br><br><br>_Trustee_<br>By: Jonathan Goldsmith, Chapter 7 Trustee<br><br>Dated: 11/3/2025 | TOWN OF WESTBOROUGH<br>By Its Select Board:<br><br><br>_____<br>Ian Johnson, Chair<br><br><br>_____<br>Sean Keogh<br><br><br>_____<br>Patrick Welch<br><br><br>_____<br>Mark Silverberg<br><br><br>_____<br>Shelby Marshall<br><br>Dated: |
| FERRIS DEVELOPMENT GROUP, LLC<br><br><br>_____<br>By:  David M. Ferris, its Manager<br><br>Dated: | LAX MEDIA LLC<br><br><br>_____<br>By:  Jegan Gomangalam, Manager<br><br>Dated: |

10

FINAL

IN WITNESS WHEREOF, the parties below have hereunto set their hands and seals, the dates below written.

| WESTBOROUGH SPE, LLC | TOWN OF WESTBOROUGH<br>By Its Select Board: |
|---|---|
| By:  Jonathan Goldsmith, Chapter 7 Trustee | Ian Johnson, Chair |
| Dated: | Sean Keogh |
| | Patrick Welch |
| | Mark Silverberg |
| | Shelby Marshall |
| | Dated:<br>10/31/2025 |
| FERRIS DEVELOPMENT GROUP, LLC | LAX MEDIA LLC |
| By:  David M. Ferris, its Manager | By:  Jegan Gomangalam, Manager |
| Dated: | Dated: |

IN WITNESS WHEREOF, the parties below have hereunto set their hands and seals, the dates below written.

| WESTBOROUGH SPE, LLC | TOWN OF WESTBOROUGH<br>By Its Select Board: |
|---|---|
| _____<br>By:  Jonathan Goldsmith, Chapter 7 Trustee<br><br>Dated: | _____<br>Ian Johnson, Chair<br><br>_____<br>Sean Keogh<br><br>_____<br>Patrick Welch<br><br>_____<br>Mark Silverberg<br><br>_____<br>Shelby Marshall<br><br>Dated: |
| FERRIS DEVELOPMENT GROUP, LLC<br><br>_____<br>By:  David M. Ferris, its Manager<br><br>Dated:  October 20, 2025 | LAX MEDIA LLC<br><br>_____<br>By:  Jegan Gomangalam, Manager<br><br>Dated: |

10

IN WITNESS WHEREOF, the parties below have hereunto set their hands and seals, the dates below written.

| WESTBOROUGH SPE, LLC | TOWN OF WESTBOROUGH<br>By Its Select Board: |
|---|---|
| By: Jonathan Goldsmith, Chapter 7 Trustee<br><br>Dated: | Ian Johnson, Chair<br><br><br>Sean Keogh<br><br><br>Patrick Welch<br><br><br>Mark Silverberg<br><br><br>Shelby Marshall<br><br>Dated: |
| FERRIS DEVELOPMENT GROUP, LLC<br><br><br>By: David M. Ferris, its Manager<br><br>Dated: | LAX MEDIA LLC<br><br><br>By: Jegan Gomangalam, Manager<br><br>Dated: 10/21/2025 |

FINAL

| LAX MEDIA MA LLC | |
| --- | --- |
| By: Jegan Gomangalam, Manager<br><br>Dated:    10/21/2025 | |
| THE MOBILESTREET TRUST<br>By its Trustees:<br><br><br>Durgaprasad Nagalla<br><br><br>Venkatesh Mohanraj<br><br>Dated: | |

| FERRIS DEVELOPMENT GROUP, LLC | LAX MEDIA LLC |
|---|---|
| By:  David M. Ferris, its Manager<br><br>Dated: | By:  Jegan Gomangalam, Manager<br><br>Dated: |
| LAX MEDIA MA LLC<br><br>By: Jegan Gomangalam, Manager<br><br>Dated: | |
| THE MOBILESTREET TRUST<br>By its Trustees:<br><br>Durgaprasad Nagalla<br><br>Venkatesh Mohanraj<br><br>Dated:  10/20/2025 | |

**EXHIBIT A**

**PERMANENT TRAIL EASEMENT**

<u>EASEMENT DEED</u>

      **Bochasanwasi Shree Akshar Purushottam Swaminarayan Sanstha – Northeast**, a Texas corporation with a mailing address of P.O. Box 519, Windsor, New Jersey 08561 ("Grantor"), hereby grants to **Westborough Community Land Trust, Inc.**, a Massachusetts not-for-profit corporation organized under M.G.L. c. 180, and having a mailing address of P.O. Box 838, Westborough, MA 01581 ("Grantee" or "WCLT"), with Quitclaim Covenants, for nominal consideration of One Dollar, a non-exclusive perpetual right and easement ("Trail Easement") to use, and to allow the public to enter and use, trails for public passage in, on, under and over a certain portion or portions of the property owned by the Grantor and located 231 Turnpike Road, Westborough, shown as Lot 1 on a plan recorded with the Worcester South District Registry of Deeds in Book 714, Page 77, containing 29 acres, more or less, according to said plan, and described in a deed recorded with said Deeds in Book _____, Page _____ (the "Property"):

      1.      Grantee and its agents, contractors , and licensees shall have the right to clear, maintain, inspect, improve, repair, mark and use trails in, under, over, and across those portions of the Property shown as "Easement A", "Easement B", and "Easement C" (collectively, the "Trail Easement Area") as well as the right to make use of the parking area, referred to as the "Parking Easement" within the Easement B area, as shown on a plan entitled "_____", prepared by _____, dated _____, 2025, recorded with said Registry herewith (the "Easement Plan"), a reduced copy of which Easement Plan is attached hereto as Exhibit A and incorporated herein, which trails may be up to twenty (20) feet widen said Parking Easement to include a minimum of five parking spaces as shown on Exhibit A, which may be increased by agreement between the Grantor and the Grantee. In addition, Grantee, its agents, contractors, and licensees shall have the further right to access Easements A, B, and C from a public way for the purposes authorized by this Easement Deed.

      2.      Grantee shall have the nonexclusive right to permit the public to pass and repass over said Trail Easement Area for passive recreational purposes, including, without limitation, bicycling, walking, jogging, dog walking, cross-country skiing, snowshoeing, scenic enjoyment, and other outdoor passive recreational activities, subject to the following prohibitions:

      (i)      Access by motorized vehicles, including, without limitation, snowmobiles, dirt bikes, motorcycles and all-terrain vehicles, shall be prohibited; with the following exceptions:

      (a)  vehicles required by Grantee and/or heavy equipment to construct, improve relocate, maintain, repair, replace and patrol the Trail Easement Area;

      (b)  motorized wheelchairs and like vehicles or motorized devices for use by the disabled, including but not limited to those "Other Power-Driven Mobility Devices" (OPDMD) as defined by the US Access Board and complying with

1

WCLT's guidance for these trails; and

(c)  emergency vehicles on emergency calls or business;

(ii)  Littering, picking or injuring plants or trees, injuring or harassing livestock or wildlife, building of fires, hunting and trapping shall be prohibited.

3.      It is expressly acknowledged by, and is the express intention of, all parties hereto that the aforesaid recreational and other use(s) of the Trail Easement Area by the public shall be subject to and benefit from the protections guaranteed by G.L. c. 21, § 17C, commonly known as the Recreational Use Statute.

4.      Grantee shall have the right, but not the obligation, from time to time, to cover or pave the trail surfaces by concrete, asphalt, wood chips, gravel, stone dust, or the like, at Grantee's sole cost and expense. Grantee shall obtain and bear any costs associated with obtaining permits required carry out future trail or trail-related improvements.  Grantee, after notice to the Grantor, may also construct, maintain, repair and replace minor structures within the Trail Easement Area, such as benches, signage, boardwalks, screening, and other similar improvements, for the safety and/or convenience of persons using the trails.

5.      Grantee shall have no right to assign this Trail Easement without prior written consent of a majority of the Grantors, provided, however, that no such consent shall be required for Grantee to assign this Trail Easement to the Town of Westborough.

6.      The Grantee shall ensure that all contractors and/or subcontractors undertaking action on its behalf to construct or repair the trail and/or other improvements the Trail Easement Area have liability coverage to protect all Grantors and naming the Grantors as additional insureds, with the following coverages: (a) general liability insurance with a limit of liability of at least One Million Dollars ($1,000,000.00) per person and Two Million Dollars ($2,000,000.00) annual aggregate for property damage and at least One Million Dollars ($1,000,000.00) per occurrence for personal injury or property damage, (b) Automobile Liability Insurance for owned, hired and non-owned automobiles with limits of liability not less than One Million Dollars ($1000,000.00) combined single limit for each accident for bodily injury and property damage; and (c) Worker's compensation insurance as required by applicable law.

7.      Grantee shall post the trails with notices stating the rules and regulations governing its use by the public, and stating further that the property over which it passes is private and that, in permitting its use by the public, the liability of the landowner is limited by Massachusetts General Laws Chapter 21, Section 17C, as amended.

8.      During such times as Grantee invites public use of the trails, Grantee shall use reasonable efforts to maintain the trails in neat, clean and safe condition, free and clear of debris and litter.  Grantee shall have the right and obligation to clear, prune, and remove vegetation, including trees and shrubs, remove fallen limbs or branches and mow vegetated areas in the Trail Easement Area, provided such cleared areas remain in a condition compatible with the natural surroundings, take measures to discourage littering and other acts that would encroach upon the natural features of the trail corridors or diminish its attractiveness, take steps to educate users in

trail etiquette, and include guidelines for users in maps and other trail publications, all at Grantee's sole cost and expense.

9.      At no time shall the public use of the trails unreasonably interfere with the rights of Grantor or the Grantor's respective successors or assigns to use the Property.  Grantee shall use reasonable efforts to prevent the public from utilizing Grantor's Property other than the Parking Easement for parking for purposes of the public accessing the Trail Easement.  In the event that such interference occurs, Grantor and Grantee shall meet to consider Grantor's concerns and use reasonable good faith efforts to address such concerns, the extent of such efforts to be subject to appropriation and authorization, but only if and as applicable.

10.      The Grantors and Grantee retain the right over time to jointly agree to relocate the Trail Easement as necessary or convenient to preserve the accessibility of the trail or its contiguity with other trails on Grantee's Land, or for any other reason, provided such relocation is duly effected by an instrument executed by the Grantors and Grantee, the instrument is duly recorded at the Registry of Deeds, and the trails and all other improvements made by Grantee to the Trail Easement Area is reconstructed at the sole cost of the party requesting the relocation.

11.      In the event Grantee damages the Property outside of the Trail Easement Area and/or any improvements thereon, Grantee shall promptly restore the Property and/or the improvements to a condition substantially similar to the condition that existed immediately prior to the commencement of such damage, to the extent practicable.

12.      The provisions of this easement, which is executed under seal, shall be binding upon and may be enforced against both the Grantors and Grantee and their respective successors and assigns.

13.      Grantor shall have no responsibility to provide any maintenance, but Grantor shall repair any damage caused by the negligence or intentional misconduct of the Grantor and/or Grantor's agents, employees, contractors and/or invitees to the Trail Easement Area and/or the improvements thereon.  Grantor agrees that neither Grantor nor Grantor's agents, employees, representatives and parties acting by or through the Grantor will unreasonably interfere with the access rights granted to Grantee hereunder.

14.      Any consent to be granted by the Grantor hereunder shall not be unreasonably conditioned, delayed or withheld, and if Grantors do not respond to requests for consent made in writing by Grantee within thirty (30) days from the submission of such request or any additional information required by the Grantee, the requested work shall be deemed approved, subject to all other provisions hereof.

15.      The Trail Easement hereby granted shall be in gross and is not for the benefit of or appurtenant to any particular land.  The Grantee's interest in the Trail Easement shall be assignable to any governmental or any non-profit, non-governmental organization whose purposes include conservation of natural areas.  The burden of this Trail Easement shall run with the land and shall be binding upon all future owners of any interest herein.

[signature page follows]

3

Witness my hand and seal this ____ day of _____, 202__.

**GRANTOR:**

_____

By: _____

Name:

Title:

    not individually and without personal liability


COMMONWEALTH OF MASSACHUSETTS

Worcester, ss.

On this _____ day of _____, 202__, before me, the undersigned notary public,
personally appeared _____, proved to me through satisfactory evidence of
identification of satisfactory evidence of identification, which was ☐ photographic
identification with signature issued by a federal or state governmental agency, ☐ oath or
affirmation of a credible witness, ☐ personal knowledge of the undersigned, to be the persons
whose name is signed on the preceding or attached document, and acknowledged to me that
he/she/they signed it voluntarily for its stated purpose as _____.


_____

Notary Public

My commission expires:

**EXHIBIT B**

**NOTICE OF VOLUNTARY DISMISSAL**

<u>**Westborough SPE LLC**</u> **v.** <u>**Town of Westborough, et al.**</u>**,**
**U.S. District Court (D. Mass.) Case No. 4:23-cv-12017**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, SS.                          CASE NO. 4:23-cv-12017-MRG

WESTBOROUGH SPE, LLC,

      Plaintiff,

v.                                                    NOTICE OF VOLUNTARY
                                                      DISMISSAL
TOWN OF WESTBOROUGH, et al.

      Defendants.

      NOW COMES Plaintiff Westborough SPE, LLC and hereby provides notice pursuant to

Fed. R. Civ. P. 41(a)(1)(A)(i) that this action and all claims asserted therein are VOLUNTARILY

DISMISSED with prejudice.  All parties are to bear their own costs and waive any rights of appeal.

      Respectfully submitted,

      PLAINTIFF WESTBOROUGH SPE, LLC

      By its Chapter 7 Trustee (Case No. 23-40709)


      _____
      Jonathan R. Goldsmith, Esq. (BBO# 548285)
      GOLDSMITH, KATZ & ARGENIO, P.C.
      1350 Main Street, Suite 1505
      Springfield, MA 01103
      Tel. (413) 747-0700

<u>Certificate of Service</u>

I hereby certify that this document filed through the CM/ECF system will be sent electronically to

the registered participants as identified on the NEF (NEF) and paper copies will be sent to those

indicated as non registered participants on _____, 202__.


      _____
      Jonathan R. Goldsmith, Esq.

**EXHIBIT C**

**STIPULATION OF VOLUNTARY DISMISSAL**

**<u>Ferris Development Group, LLC</u> v. <u>Town of Westborough, et al.</u>,
Mass. Superior Court Case No. 2285CV01281**

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                                    SUPERIOR COURT DEPARTMENT
                                                 CASE NO. 2285CV01281

---

FERRIS DEVELOPMENT GROUP, LLC,

      Plaintiff,

v.                                               STIPULATION OF VOLUNTARY
                                                 DISMISSAL
TOWN OF WESTBOROUGH, LAX MEDIA,
LLC and LAX MEDIA MA, LLC.

      Defendants.

---

NOW COME Plaintiff Ferris Development Group, LLC and Defendants Town of Westborough, Lax Media, LLC, and Lax Media MA, LLC and pursuant to Mass. R. Civ. P. 41(a)(1), hereby STIPULATE that this action and all claims asserted therein are VOLUNTARILY DISMISSED with prejudice. All parties are to bear their own costs and waive any rights of appeal.

Respectfully submitted,

PLAINTIFF                                  DEFENDANT

FERRIS DEVELOPMENT GROUP, LLC              TOWN OF WESTBOROUGH

By its attorney,                           By its attorneys,

_____          _____
Thomas A. Mullen (BBO# 360315)             Thomas W. McEnaney (BBO# 629130)
Thomas A. Mullen, P.C.                     Roger L. Smerage (BBO# 675388)
40 Salem Street, Suite 12                  KP Law, P.C.
Lynnfield, MA 01940                          Town Counsel
(781) 245-2284                             101 Arch Street
tmullen@thomasamullenpc.com                12th Floor
                                           Boston, MA  02110-1109
                                           (617) 556-0007
                                           tmcenaney@k-plaw.com
                                           rsmerage@k-plaw.com

                                           DEFENDANTS

                                           LAX MEDIA, LLC and LAX MEDIA MA,
                                           LLC

                                           By their attorney,

                                           _____
                                           Christopher M. Mulhearn (BBO# 628626)
                                           Law Office of Christopher M. Mulhearn, Inc.
                                           100 Centerville Road, Suite 1
                                           Warwick, RI 02886
                                           Tel.: (401) 533-9330
                                           cmulhearn@mulhearnlawri.com

Dated: _____, 202__

<u>CERTIFICATE OF SERVICE</u>

I, Roger L. Smerage, hereby certify that on the below date, I caused a copy of the foregoing Stipulation of Voluntary Dismissal to be served by electronic mail to the following counsel of record:

>
> Thomas A. Mullen, Esq.
> 40 Salem Street
> Building 2, Suite 12
> Lynnfield, MA 01940
> tmullen@thomasamullenpc.com
> *Counsel for Plaintiff Ferris Development*
> *Group, LLC*
>
> Christopher M. Mulhearn, Esq.
> 1300 Division Road, Suite 304
> West Warwick, RI 02893
> cmulhearn@mulhearnlawri.com
> *Counsel for Defendants Lax Media, LLC*
> *and Lax Media MA, LLC*

Dated: _____, 202__            _____
                                             Roger L. Smerage

**EXHIBIT D**

**STIPULATION OF VOLUNTARY DISMISSAL**

**<u>Jonathan R. Goldsmith, Chapter 7 Trustee of Westborough SPE LLC</u> v. <u>Town of
Westborough</u>,**
**U.S. Bankr. Ct. D. Mass. Case No. 25-AP-04003**

## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MASSACHUSETTS

Adversary Proceeding 25-04003
Case No. 23-40709-CJP (Chapter 7)

|  |  |
| --- | --- |
| In re:<br><br>WESTBOROUGH SPE LLC<br><br>JONATHAN R. GOLDSMITH, CHAPTER 7 TRUSTEE OF WESTBOROUGH SPE LLC,<br><br>      Plaintiff,<br><br>v.<br><br>TOWN OF WESTBOROUGH,<br><br>       Defendant. | STIPULATION OF VOLUNTARY DISMISSAL WITH PREJUDICE |

NOW COME Plaintiff Jonathan R. Goldsmith, Chapter 7 Trustee (the "Trustee") of Debtor Westborough SPE LLC ("Debtor"), and Defendant Town of Westborough (the "Town," and together with the Trustee, the "Parties"), and pursuant to Mass. R. Civ. P. 41(a)(1), hereby STIPULATE that this action and all claims asserted therein are VOLUNTARILY DISMISSED with prejudice.  All parties are to bear their own costs and waive any rights of appeal.

Respectfully submitted,

PLAINTIFF                                         DEFENDANT

JONATHAN R. GOLDSMITH,                TOWN OF WESTBOROUGH
CHAPTER 7 TRUSTEE OF
WESTBOROUGH SPE LLC                      By its attorneys,

By his attorneys,

_____        _____
Christine E. Devine, BBO# 566990         Brian W. Riley (BBO# 555385)
Angelina M. Savoia, BBO# 715690         Jeffrey T. Blake (BBO# 655773)
Nicholson Devine LLC                           Roger L. Smerage (BBO# 675388)
P.O. Box 7                                            KP Law, P.C.
Medway, MA 02053                               Town Counsel
Phone:  508-533-7240                           101 Arch Street, 12th Floor
Email:  christine@nicholsondevine.com    Boston, MA 02110-1109
                                                         (617) 556-0007
                                                         briley@k-plaw.com
                                                         jblake@k-plaw.com
                                                         rsmerage@k-plaw.com

Dated: _____, 202__

<u>CERTIFICATE OF SERVICE</u>

I, Roger L. Smerage, hereby certify that on the below date, I caused a copy of the foregoing

document to be served through the Court's CM/ECF system to the following counsel of record or

by U.S. mail to the following unregistered parties:

| | | |
|---|---|---|
| Stephen F. Gordon<br>The Gordon Law Firm LLP<br>River Place<br>57 River Street<br>Wellesley, MA 02481<br>sgordon@gordonfirm.com<br>*Attorney for Petitioning Creditors* | Jonathan R. Goldsmith<br>Goldsmith, Katz & Argenio P.C.<br>1350 Main Street, 15th Floor<br>Springfield, MA 01103<br>trusteedocs1@gkalawfirm.com<br>*Attorney for Chapter 7 Trustee* | Christine E. Devine<br>Nicholson Devine LLC<br>PO Box 7<br>Medway, MA 02505<br>christine@nicholsondevine.com<br>*Attorney for Chapter 7 Trustee* |
| Lolonyon Akouete<br>800 Red Milles Rd.<br>Wallkill, NY 12589<br>info@smartinvestorsllc.com<br>*Creditor* | Lenard Benson Zide<br>Butters Brazilian LLP<br>420 Boylston Street, 4th Floor<br>Boston, MA 02116<br>zide@buttersbrazilian.com<br>*Attorney for Creditor The MobileStreet Trust* | Paul W. Carey<br>Mirick, O'Connell, DeMallie & Lougee, LLP<br>100 Front Street<br>Worcester, MA 01608-1417<br>pcarey@mirickoconnell.com<br>*Attorney for Creditor Ferris Development Group, LLC* |
| Denise Edwards<br>137 North 25th Street<br>Wyandanch, NY 11798<br>deniseedwards818@yahoo.com<br>*Creditor* | Jonathan La Liberte<br>Sherin and Lodgen LLP<br>101 Federal Street, 30th Floor<br>Boston, MA 02110<br>jclaliberte@sherin.com<br>*Attorney for Creditor Sherin and Lodgen LLP* | Darin Clagg<br>24 Kobbs Korner Rd.<br>Pine Bush, NY 12566<br>Creditor (by U.S. Mail) |

Dated: _____, 202__

_____

Roger L. Smerage

# EXHIBIT B

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re:

**WESTBOROUGH SPE LLC,**

      **Debtor.**

**Chapter 7**
**Case No. 23-40709-CJP**

### ORDER (I) AUTHORIZING THE PRIVATE SALE OF 231 TURNPIKE ROAD, WESTBOROUGH, MASSACHUSETTS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (II) APPROVING PURCHASE AND SALE AGREEMENT; (III) AUTHORIZING DISBURSEMENTS OF SALE PROCEEDS PURSUANT TO SETTLEMENT AGREEMENT AND MUTUAL RELEASE; AND (IV) GRANTING RELATED RELIEF

This matter having come before this Court upon the *Trustee's Motion for Entry of Order Authorizing and Approving the Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of Liens, Claims, Encumbrances, and Interests and for Related Relief* (the "**Motion**") [Dkt. No. 968] filed by Jonathan R. Goldsmith, the Chapter 7 Trustee (the "**Trustee**") of the bankruptcy estate (the "**Estate**") of the above-captioned debtor (the "**Debtor**") as supplemented by the *Supplement to Motion to Approve Settlement [Dkt. No. 967] and Motion to Approve Sale of 231 Turnpike Road, Westborough, Massachusetts [Dkt. No. 968]* (the "**Sale and Settlement Motion Supplement**" [Dkt. No. 978], together with the Motion, the "**Sale Motion**"), seeking entry of an order (the "**Sale Order**") pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "**Bankruptcy Rules**") and Rule 6004-1 of the Massachusetts Local Bankruptcy Rules (the "**Local Rules**" or "**MLBR**") authorizing the Trustee to (i) sell the Estate's right, title, and interest in the real property at 231 Turnpike Road, Westborough, Massachusetts (the "**Property**") to Bochasanwasi

Shree Akshar Purushottam Swaminarayan Sanstha – Northeast, a Texas corporation, or its nominee (the "**Buyer**") for the sum of Five Million One Hundred Eleven Thousand One Hundred Eleven and 11/100 Dollars ($5,111,111.11) (the "**Purchase Price**") pursuant to the Purchase and Sale Agreement dated November 3, 2025 and attached as Exhibit A to the Sale Motion (the "**PSA**"), free and clear of all liens, claims, encumbrances, and interests, with such liens, claims, encumbrances, and interests to attach to the net proceeds of the sale as set forth in the Sale Motion (the "**Sale**"), (ii) distribute a portion of the proceeds of the Sale pursuant to the *Settlement Agreement and Mutual Release* [Dkt. No. 966] (the "**Settlement Agreement**") approved by separate order of this Court of even date herewith upon this Court's allowance of the *Trustee's Motion for Entry of an Order Approving and Authorizing Settlement Agreement and Mutual Release Pursuant to Fed. R. Bankr. P. 9019* [Dkt. No. 967], as supplemented by the Sale and Settlement Motion Supplement (together, the "**Settlement Motion**"); and (iii) related relief; and the Court having entered the *Proceeding Memorandum and Order* [Dkt. No. 992] (the "**Sale and Settlement Procedures Order**") approving the combined form of the *Notice of (i) Intended Private Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of All Liens, Claims, Encumbrances, and Interests, (ii) Deadline for Filing Objections, and (iii) Hearing Date and (i) Proposed Settlement Agreement and Mutual Release, (ii) Deadline for Filing Objections, and (iii) Hearing Date* [Dkt. 989] (the "**Sale and Settlement Notice**"); and this Court having conducted contemporaneous hearings on the Sale Motion and the Settlement Motion on December 17, 2025 (the "**Sale and Settlement Hearings**"), which hearings were evidentiary hearings; and all parties in interest having been heard, or having had to the opportunity to be heard at the Sale and Settlement Hearings; and the Court having reviewed and considered the Sale Motion, the PSA, other evidence in support of the Sale, and the record before

the Court; and the Court having heard, weighed, and considered at the Sale and Settlement Hearings the testimony of the Trustee, the evidentiary proffers made, the statements of counsel, and the statements of interested parties wishing to be heard; and the Court having heard and considered the *Creditor Lolonyon Akouete's Objection to Trustee's Motion to Approve Settlement Agreement Pursuant to Fed. R. Bankr. P 9019* [Dkt. No. 1031] (the "**Akouete Objection**"); and due notice of the Sale Motion, the Sale, the Settlement Motion, the Settlement Agreement and all of the relief requested therein having been provided under the circumstances of the case and as reflected in the certificates of service filed with the Court, and no further notice being necessary; and the Court having determined that the relief sought in the Sale Motion, the Sale, and Trustee's entry into the PSA are in the best interests of the Debtor, the Estate, the creditors of the Debtor and the Estate, and all other parties in interest of the Debtor and the Estate; and the Court having jurisdiction over this matter; and that the legal and factual bases set forth in the Sale Motion establish just cause for the relief granted herein; and after due deliberation thereon,

IT IS HEREBY FOUND AND DETERMINED THAT:

I.      **Jurisdiction, Final Order, Statutory Predicates.**

A.      The Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(l) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

C.     The statutory predicates for the relief requested in the Sale Motion are Bankruptcy Code §§ 105(a) and 363(b), (f), and (m) and Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e), (f), 9007, 9008 and 9014.

D.     The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

E.     To the extent any of the following findings of fact constitute conclusions of law, they are hereby adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are hereby adopted as such.

F.     Any and all findings of fact and conclusions of law stated orally by the Court on the record at the Sale and Settlement Hearings are hereby incorporated into this Order as findings of fact and conclusions of law, to the extent they are not inconsistent herewith.

G.     The Buyer and Trustee have acted at arm's length and in good faith as contemplated by Bankruptcy Code § 363(m) at all times in negotiating and pursuing a closing of the transactions contemplated by the PSA, including regarding compliance with the Sales and Settlement Procedures Order.

## II.    Notice of the Sale Hearing, Sale Motion, Sale, Settlement Motion, and Settlement Agreement.

A.     Actual written notice of the Sale Hearing, the Sale Motion, the Sale, the Settlement Motion, and the Settlement Agreement, and a reasonable opportunity to object or be heard with respect to the Sale Motion, the Settlement Motion, and to the relief requested therein, has been afforded to all known interested persons and entities, including but not limited to the following parties (the "**Notice Parties**"): (i) the Office of the United States Trustee for the District of Massachusetts; (ii) the Internal Revenue Service; (iii) the Department of Revenue for

4

the Commonwealth of Massachusetts, (iv) counsel to the Buyer; (v) all entities known by the

Trustee that may have a lien, claim, encumbrance, or other interest in the Estate (for which

identifying information and addresses are available to the Trustee); (vi) all of the Estate's known

creditors; (vii) any governmental unit known to the Trustee to have a claim in this case; (viii) all

parties that have requested notice in this Chapter 7 case under Rule 2002; (ix) all parties to the

Settlement Agreement; (x) all persons and entities having submitted a bid to purchase the

Property; and (xi) all persons and entities known by the Trustee to potentially have an interest in

any surplus assets of the Estate.

B.     The Trustee provided all interested parties with timely and proper notice of the

Sale Motion, the proposed Sale, the PSA, the Settlement Motion, and the Settlement Agreement

including, without limitation, by providing a copy of the Sale and Settlement Notice to each of

the Notice Parties.

C.     As evidenced by the certificates of service previously filed with the Court [Dkt.

Nos. 990, 1017, and 1018] and the *Trustee's Notice of Publication Regarding Proposed Sale of

231 Turnpike Road, Westborough, Massachusetts and Proposed Settlement Agreement* [Dkt. No.

1015], timely and sufficient notice of the Sale Motion, the Sale, Settlement Motion, and the

Settlement Agreement has been provided under the circumstances of the case in accordance with

Bankruptcy Code §§ 102(1) and 363 and Bankruptcy Rules 2002, 6004, and 9014. The notice

and notices described in this Section II of this Order were good, sufficient, and appropriate under

the circumstances, and no other further notice of the Sale Motion, the Sale, Settlement Motion,

the Settlement Agreement, or of the Sale and Settlement Hearings is or was required.

D.     The disclosures made by the Trustee concerning the Sale Motion, the Sale,

Settlement Motion, the Settlement Agreement, and the Sale and Settlement Hearings were

complete and adequate.

E.     By separate order of even date herewith, this Court has granted the Settlement

Motion, approving and authorizing the Settlement Agreement (the "**Settlement Approval**

**Order**"). The Settlement Agreement is necessary to accomplish the Sale and the Trustee has

demonstrated good and sufficient cause and has exercised reasonable business judgment to

enter the Settlement Agreement, including without limitation, with respect to all of the

compromises contained within the Settlement Agreement and all of the payments required

by the Settlement Agreement.

**III.    Good Faith of the Buyer.**

A.     The Buyer is not an "insider" of the Debtor, as that term is defined in Bankruptcy

Code § 101(31).

B.     The Buyer is purchasing the Property in good faith and is a good faith buyer

withing the meaning of Bankruptcy Code § 363(m) and is therefore entitled to the full protection

of that provision in that, among other things: (i) the Buyer recognized that the Trustee solicited

bids for the Property from multiple parties and that Trustee was free to deal with any other party

interested in purchasing the Property, (ii) all payments to be made by the Buyer and other

agreements or arrangements entered into by the Buyer in connection with the Sale pursuant to the

PSA have been disclosed; (iii) the Buyer has not violated Bankruptcy Code § 363(n) by any

action or inaction; (iv) no common identity of directors or controlling stockholders or other

interest holders exists between the Buyer and the Debtor or the Buyer and the Trustee; and

6

(v) the negotiation and execution of the PSA and any other agreements or instruments related thereto were at arms' length and in good faith.

**IV.    Highest and Best Offer.**

A.    Prior to selecting the Buyer as the purchaser of the Property, the Trustee engaged in a bid solicitation process designed to target interested parties and maximize the value of the Property for the Estate. Based on the bid solicitation process described in the Sale Motion and the evidence at the Sale and Settlement Hearings, the bid solicitation process afforded a full, fair, and reasonable opportunity for any person or entity to make an offer to purchase the Property. The process conducted by the Trustee was conducted in a non-collusive, fair, and good faith manner and a reasonable opportunity was provided to any interested party to object to the Sale based on, without limitation, the desire to submit a higher and better offer for the Property.

B.    The consideration to be provided by the Buyer under the PSA constitutes the highest and best offer for the Property and will provide a greater recovery for the estate than would be provided by any other available alternative. The Trustee's determination that the PSA constitutes the highest and best offer for the Property constitutes a valid and sound exercise of the Trustee's business judgment consistent with its fiduciary duties.

C.    The PSA represents a fair and reasonable offer to purchase the Property under the circumstances of this case. No other person or entity or group of entities has offered to purchase the Property for a greater economic value to the estate than the Buyer.

D.    Approval of the Sale Motion and the PSA and the consummation of the transactions contemplated thereby is in the best interests of the Debtor, the Estate, creditors of the Estate, equity holders of the Debtor, and any and all other parties in interest.

E.      The Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale.

**V.      No Fraudulent Transfer; No Successor Liability.**

A.      The PSA was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States or any state, (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act). The consideration provided by the Buyer pursuant to the PSA is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States and any state (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act).

B.      By virtue of the consummation of the Sale, (i) the Buyer is not a continuation of the Debtor or its estate, there is no continuity between the Buyer and the Debtor, there is no common identity between the Debtor and the Buyer, there is no continuity of enterprise between the Debtor and the Buyer, and the Buyer is not a mere continuation of the Debtor or of the Estate, (ii) the Buyer is not holding itself out to the public as a continuation of the Debtor or of the Estate, and (iii) the Sale does not amount to a consolidation, merger or de facto consolidation or merger of the Buyer and the Debtor and/or the Estate. Accordingly, the Buyer is not and shall not be deemed a successor to the Debtor, for any purpose or under any theory, as a result of the consummation of the Sale.

**VI.     Validity of Transfer.**

A.      The Trustee and the Buyer each have full power and authority to execute and deliver the PSA and all other documents contemplated thereby, and no further consents or

approvals of this Court are required for the Trustee and the Buyer to consummate the

transactions contemplated by the PSA, except as otherwise set forth in the PSA.

      B.    Subject only to the Town of Westborough vacating its foreclosure judgment

pursuant to the Settlement Agreement, the Property constitutes property of the Estate and, upon

the Town of Westborough vacating its foreclosure judgment, title to the Property shall be

property of the Estate within the meaning of Bankruptcy Code § 541(a). The transfer of the

Property to the Buyer will be, as of the Closing[1], a legal, valid, and effective transfer of the

Property, and vests or will vest the Buyer with all right, title, and interest of the Estate to the

Property free and clear of all (a) liens (including but not limited to mechanics, artisans, suppliers,

design professionals, laborers, construction, constitutional, statutory or other liens whether

asserted, unasserted, perfected or unperfected), (b) encumbrances, pledges, mortgages, deeds of

trust, security interests, claims, options, rights of first refusal, condemnation, easements,

servitudes, proxies, voting trusts or agreements, or transfer restrictions under any agreement,

(c) claims (including, without limitation, all claims within the meaning of Bankruptcy Code

§§ 101(5) and 102(2)), and (d) liabilities, whether imposed by agreement, law, equity, or

otherwise and whether known or unknown, fixed, or contingent or arising prior to or subsequent

to the commencement of this case (each of the foregoing described in clauses (a), (b), (c), and

(d) collectively or individually, the "**Adverse Interests**"), except to the extent of any exceptions

thereto as specifically set forth in the PSA (the "**Permitted Exceptions**").

**VII.   Bankruptcy Code § 363(f) Is Satisfied.**

      A.    The Buyer would not have entered into the PSA and would not consummate the

transactions contemplated thereby if the Sale of the Property to the Buyer were not, except as to

---

[1] As used in this Order, the term "**Closing**" shall have the meaning ascribed thereto in the PSA and the term "**Closing Date**" shall mean the date that the Closing occurs pursuant to the PSA.

the Permitted Exceptions, free and clear of all Adverse Interests of any kind or nature whatsoever

or if the Buyer would, or in the future could, be liable for any of such Adverse Interests.

B.      The Trustee may sell the Property free and clear of all Adverse Interests against

the Debtor, the Estate, or against the Property (except as to any Permitted Exceptions as

specifically set forth in the PSA) because, in each case, one or more of the standards set forth in

Bankruptcy Code § 363(f)(1) through (5) has been satisfied.  Those holders of Adverse Interests

against or in the Debtor, the Estate, or the Property who did not object, or who withdrew their

objections, to the Sale or the Sale Motion are deemed to have consented pursuant to Bankruptcy

Code § 363(f)(2). Those holders of such Adverse Interests who did object fall within one or more

of the other subsections of Bankruptcy Code § 363(f) and are adequately protected by having

their Adverse Interests, if any, in each instance against the Debtor, the Estate, or the Property,

attach to the cash proceeds of the Sale (net of the payments authorized herein), in the same order

of priority, with the same validity, force and effect (if any) that such creditor or interest holder

had prior to the Sale, subject to any claims and defenses the Debtor or the Estate may possess

with respect thereto.

**VIII.   Compelling Circumstances for an Immediate Sale.**

A.      To maximize the value of the Property, it is essential that the Sale occur within

the time constraints set forth in the PSA.  The consummation of the Sale is necessary both to

preserve and maximize the value of the assets of the Estate and the Debtor for the benefit of the

Estate, its creditors, equity or other interest holders, and all other parties in interest, and to

provide the means for the Trustee to maximize creditor recoveries.  Time is of the essence in

consummating the Sale.

B.      The consummation of the transactions is legal, valid, and properly authorized

under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), and 363(m), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

<u>**General Provisions**</u>

1.      The relief requested in the Sale Motion is granted and approved, and the Sale contemplated by the PSA is approved and authorized as set forth in this Order.

2.      This Court's findings of fact and conclusions of law set forth herein and as stated by this Court on the record during the Sale and Settlement Hearings conducted on December 17, 2025, are incorporated into this Order by reference.

3.      This Court heard and considered the Akouete Objection and hereby overrules the Akouete Objection.

4.      Any and all other objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled by stipulation or agreement filed with the Court, and all reservations of rights included therein, are hereby overruled or the interests of such objections have been otherwise satisfied or adequately provided for.

<u>**Approval of the PSA**</u>

5.      The PSA and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved as set forth herein.

6.      Pursuant to Bankruptcy Code § 363(b), the Trustee is authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale of the Property to the Buyer pursuant to and in accordance with the terms and conditions of the PSA, (ii) close the

Sale as contemplated in the PSA and this Order, (iii) make any and all payments required by the

PSA and required by the Settlement Agreement, and (iv) execute and deliver, perform under,

consummate, implement, and close fully the PSA, together with all additional instruments and

documents that may be reasonably necessary or desirable to implement the PSA and to close the

Sale, including any ancillary documents, as may be reasonably necessary or appropriate to the

performance of the obligations as contemplated by the PSA and such other ancillary documents.

7.      This Order shall be binding in all respects upon the Trustee, the Debtor, the

Estate, all current and former holders of equity interests in the Debtor, all holders of any claim(s)

(whether known or unknown) against the Estate, any holders of Adverse Interests against or on

all or any portion of the Property, the Buyer and all successors and assigns of the Buyer, the

parties to the Settlement Agreement, the Property, and any trustee(s), if any, subsequently

appointed in this case. This Order and the PSA shall inure to the benefit of the Estate, its

creditors, the Buyer, and each of their respective successors and assigns.

8.      By separate order of even date herewith, this Court has entered the Settlement

Approval Order, which order approves the Settlement Agreement and authorizes all

provisions thereof. The Trustee is authorized to give effect to all provisions of the

Settlement Approval Order in connection with the Sale including, without limitation,

making all payments required by the Settlement Agreement and taking all actions required

by the Settlement Agreement.

### Transfer of the Property

9.      Pursuant to Bankruptcy Code §§ 105(a), 363(b), and 363(f), the Trustee is

authorized to transfer the Property on the Closing Date. The Property shall be transferred to the

Buyer upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding,

and effective transfer of the Property and shall be free and clear of all Adverse Interests, except

any Permitted Exceptions under the PSA.  Upon the Closing, the Buyer shall take title to and

possession of the Property subject only to the Permitted Exceptions. Pursuant to Bankruptcy

Code § 363(f), the transfer of title to the Property shall, except for Permitted Exceptions

specifically set forth in the PSA, be free and clear of all Adverse Interests based on any theory

including without limitation any successor or successor-in-interest liability theory.  Adverse

Interests shall attach solely to the cash proceeds of the Sale, net of all payments authorized by

this Order and required by the Settlement Agreement, with the same validity, priority, extent, and

effect that they now have as against the Property, subject to any claims and defenses the Estate

and the Debtor may possess with respect thereto.

10.     On or about the Closing Date, contemporaneous with the transfer of the Property

to the Buyer, or shortly thereafter as provided by the Settlement Agreement, the Trustee is

authorized and directed to pay:

i.     At Closing, all ordinary and usual closing costs and expenses;

ii.     At Closing, deed stamps or similar transfer taxes as required upon
the sale of real property;

iii.     To the Town of Westborough for the "Town Payment" as defined
in the Settlement Agreement, $1,640,000 to be paid
contemporaneous with Closing;

iv.     To Durgaprasad Nagalla and Venkatesh Mohanraj, Trustees of The
MobileStreet Trust, u/d/t dated December 11, 2014, recorded with
the Worcester Registry of Deeds in Book 53141, Page 193
("MobileStreet") for the "Use Modification Payment" as defined in
the Settlement Agreement, $200,000 to be paid within ten (10)
days after the Closing Date;

v.     To MobileStreet for the "MobileStreet Maintenance Payment" as

defined in the Settlement Agreement, $556,763 to be paid within ten (10) days after the Closing Date;

vi.     To Ferris Development Group, LLC for the "Ferris Payment" as defined in the Settlement Agreement, $100,000 to be paid within ten (10) days after the Closing Date; and

vii.    To Lax Media LLC and Lax Media MA LLC for the "Lax Payment" as defined in the Settlement Agreement, $100,000 to be paid within ten (10) days after the Closing Date.

11.     Except as expressly provided by the PSA with respect to Permitted Exceptions, all persons and entities holding Adverse Interests in or to the Property arising under or out of, in connection with, or in any way relating to the Debtor, the Estate, or the Property, hereby are forever barred, estopped and permanently enjoined from asserting against the Buyer or its successors or assigns, their assets, or the Property, such persons' or entities' Adverse Interests in and to the Property.

12.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any applicable Adverse Interests and encumbrances of record.

13.     If any person or entity which has filed statements or other documents or agreements evidencing Adverse Interests in the Property shall not have delivered to the Trustee prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to the Buyer for the purpose of documenting the release of all Adverse Interests (other than Permitted Exceptions), which the person or entity has or may assert with respect to the Property, the Buyer and the Trustee are hereby authorized to execute and file such statements, instruments, releases and other documents on

14

behalf of such person or entity with respect to the Property.

14.     This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the PSA.

### Other Provisions

15.     Effective upon the Closing Date and except as otherwise set forth in the PSA with respect to Permitted Exceptions or as specifically set forth in the Settlement Agreement, all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Buyer, its successors and assigns, or the Property, with respect to any (a) Adverse Interests arising under, out of, in connection with, or in any way relating to the Debtor, the Estate, the Buyer, or the Property, or (b) successor liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Buyer, its successors or assigns, assets, or properties; (ii) enforcing, attaching, collecting or recovering in any manner, any judgment, award, decree, or order against the Buyer, its successors or assigns, assets, or properties; (iii) creating,

15

perfecting, or enforcing any Adverse Interests against the Buyer, its successors or assigns, assets,

or properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against

any obligation due the Buyer or its successors or assigns; or (v) commencing or continuing any

action, in any manner or place, that does not comply or is inconsistent with the provisions of this

Order or other orders of the Court, or the agreements or actions contemplated or taken in respect

thereof.

16.     Except for the Permitted Exceptions or as otherwise expressly set forth in the

PSA, the Buyer shall not have any liability or other obligation of the Debtor of the Estate arising

under or related to the Property or the PSA or the transactions related thereto. Without limiting the

generality of the foregoing, and except for the Permitted Exceptions provided in the PSA, the

Buyer shall not be liable for any claims or any other Adverse Interests against the Debtor or the

Estate or any of either of their predecessors or affiliates, and the Buyer shall have no successor or

vicarious liabilities of any kind or character, whether known or unknown as of the Closing Date,

now existing or hereafter arising, whether fixed or contingent, with respect to the Debtor or the

Estate or any obligations of the Debtor or the Estate arising prior to the Closing Date. The Buyer

has given substantial consideration under the PSA for the benefit of the holders of any Adverse

Interests. The consideration given by the Buyer shall constitute valid and valuable

consideration for the releases of any potential claims of successor liability of the Buyer, which

releases shall be deemed to have been given in favor of the Buyer by all holders of Adverse

Interests against or interests in the Debtor or the Property.

17.     The transactions contemplated by the PSA are undertaken by the Buyer without

collusion and in good faith, as that term is defined in Bankruptcy Code § 363(m) of the

Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization

provided herein to consummate the Sale shall not affect the validity of the Sale (including the

payment of the disbursements authorized on or after Closing pursuant to and required by the

Settlement Agreement), unless such authorization and such Sale are duly stayed pending such

appeal. The Buyer is a good faith Buyer within the meaning of Bankruptcy Code § 363(m) and,

as such, is entitled to the full protections of Bankruptcy Code § 363(m).

18.     The consideration provided by the Buyer for the Property under the PSA is fair

and reasonable, and the Sale may not be avoided under Bankruptcy Code § 363(n). The reversal

or modification on appeal of the authorization provided herein to consummate the Sale shall not

affect the validity of the Sale (including, without limitation, the payment of the disbursements

authorized on or after Closing pursuant to and required by the Settlement Agreement), unless

such authorization is duly stayed pending such appeal. No governmental unit or regulatory

authority may revoke or suspend any right, license, or other permission relating to the use of the

Property sold, transferred, or conveyed to the Buyer on account of the pendency of this Case or

the consummation of the Sale.

19.     No Order of any type or kind entered in any related proceeding subsequent to

entry of this Order shall conflict with or derogate from the provisions of the PSA or the terms of

this Order.

20.     The failure specifically to include any particular provisions of the PSA in this

Order shall not diminish or impair the effectiveness of such provision, it being the intent of the

Court that the PSA be authorized and approved in its entirety.

21.     The failure specifically to include or describe any particular provisions of the

17

Settlement Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that, pursuant to the Settlement Approval Order entered contemporaneously herewith, the Settlement Agreement be approved in its entirety and that all actions required to be taken by the Trustee pursuant to the Settlement Agreement be authorized.

22.    Unless this Court orders otherwise, this Court shall retain exclusive jurisdiction to the fullest extent of applicable law to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the PSA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Trustee or the Estate is a party, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

23.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

24.    To the extent that this Order is inconsistent with the PSA or any prior order or pleading with respect to the Sale Motion in this Case, the terms of this Order shall govern.

By the Court,

Dated: December 24, 2025

_____
Christopher J. Panos
United States Bankruptcy Judge

# EXHIBIT C

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re:

**WESTBOROUGH SPE LLC,**

        **Debtor.**

**Chapter 7**
**Case No. 23-40709-CJP**

### ORDER GRANTING TRUSTEE'S MOTION FOR ENTRY OF AN ORDER APPROVING AND AUTHORIZING SETTLEMENT AGREEMENT AND MUTUAL RELEASE PURSUANT TO FED. R. BANKR. P. 9019, AS SUPPLEMENTED

This matter having come before this Court upon the *Trustee's Motion for Entry of an Order Approving and Authorizing Settlement Agreement and Mutual Release Pursuant to Fed. R. Bankr. P. 9019* [Dkt. No. 967] (the "**Motion**") filed by Jonathan R. Goldsmith, the Chapter 7 Trustee (the "**Trustee**") of the bankruptcy estate (the "**Estate**") of the above-captioned debtor (the "**Debtor**") as supplemented by the *Supplement to Motion to Approve Settlement [Dkt. No. 967] and Motion to Approve Sale of 231 Turnpike Road, Westborough, Massachusetts [Dkt. No. 968]* (the "**Sale and Settlement Motion Supplement**" [Dkt. No. 978], together with the Motion, the "**Settlement Motion**"), seeking approval of the *Settlement Agreement and Mutual Release* [Dkt. No. 966] (the "**Settlement Agreement**") by and among the Trustee, the Town of Westborough (the "**Town**"), Ferris Development Group, LLC ("**Ferris**"), Lax Media LLC and Lax Media MA LLC (together, "**Lax**"), and Durgaprasad Nagalla and Venkatesh Mohanraj, Trustees of The MobileStreet Trust, u/d/t dated December 11, 2014, recorded with the Worcester Registry of Deeds in Book 53141, Page 193 ("**MobileStreet**") (each a "**Party**" and collectively the "**Parties**"); and notice of the Settlement Motion and the Settlement Agreement having been sufficient under the circumstances pursuant to the *Notice of (i) Intended Private Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of All Liens, Claims,*

1

*Encumbrances, and Interests, (ii) Deadline for Filing Objections, and (iii) Hearing Date and (i)*

*Proposed Settlement Agreement and Mutual Release, (ii) Deadline for Filing Objections, and*

*(iii) Hearing Date* [Dkt. 989] (the "**Sale and Settlement Notice**") and the certificates of service

previously filed with the Court [Dkt. Nos. 990, 1017, and 1018] and the *Trustee's Notice of*

*Publication Regarding Proposed Sale of 231 Turnpike Road, Westborough, Massachusetts and*

*Proposed Settlement Agreement* [Dkt. No. 1015]; and this Court having conducted

contemporaneous hearings on December 17, 2025 (the "**Sale and Settlement Hearings**") on the

Settlement Motion and on the *Trustee's Motion for Entry of Order Authorizing and Approving*

*the Sale of 231 Turnpike Road, Westborough, Massachusetts Free and Clear of Liens, Claims,*

*Encumbrances, and Interests and for Related Relief* (the "**Sale Motion**") [Dkt. No. 968] which

sought authority to sell the Estate's right, title, and interest in the real property at 231 Turnpike

Road, Westborough, Massachusetts (the "**Property**"), free and clear of all liens, claims,

encumbrances, and interests, with such liens, claims, encumbrances and interests attaching to the

net proceeds of the Sale as set forth in more detail in the Sale Motion and in the Purchase and

Sale Agreement attached to the Sale Motion (the "**PSA**"); all parties in interest having been

heard, or having had to the opportunity to be heard at the Sale and Settlement Hearings, at which

evidence was taken; and the Court having contemporaneously considered and approved the Sale

Motion and authorized the Sale of the Property pursuant to the PSA by entry of a separate order;

and the Court having reviewed and considered the Settlement Motion, the Settlement Agreement,

other evidence in support of the Settlement Motion and Settlement Agreement and the record

before the Court; and the Court having heard, weighed, and considered at the Sale and

Settlement Hearings the testimony of the Trustee, the evidentiary proffers made, the statements

of counsel, and the statements of interested parties wishing to be heard; and the Court having

heard and considered the *Creditor Lolonyon Akouete's Objection to Trustee's Motion to Approve Settlement Agreement Pursuant to Fed. R. Bankr. P 9019* [Dkt. No. 1031] (the "**Akouete Objection**"); and due notice of the Sale Motion, the Sale, the Settlement Motion, the Settlement Agreement and all of the relief requested therein having been provided and no further notice being necessary; and the Court having determined that the relief sought in the Settlement Motion and the Trustee's entry into the Settlement Agreement are a reasonable exercise of the Trustee's business judgment, *see In re Healthco Int'l, Inc.*, 136 F.3d 45, 51 (1st Cir. 1998) (deference to Trustee's business judgment in connection with proposed settlement if it falls above "the lowest point in the range of reasonableness"), and is in the best interests of the Debtor's Estate; and the Court having jurisdiction over this matter; and that the legal and factual bases set forth in the Settlement Motion establish just cause for the relief granted herein; and after due deliberation thereon, and sufficient cause appearing therefor, for the reasons stated on the record and supplementing the Proceeding Memorandum and Order entered at Dkt. No. 1036 approving the Settlement Agreement and **IT IS HEREBY**:

**ORDERED** that, the Settlement Motion is approved and authorized in all respects; it is further

**ORDERED** that, the Akouete Objection is overruled; it is further

**ORDERED** that, the Trustee is authorized to enter into the Settlement Agreement and to take any and all actions required by the Settlement Agreement; it is further

**ORDERED** that, contemporaneous with the transfer of the Property to Bochasanwasi Shree Akshar Purushottam Swaminarayan Sanstha – Northeast, a Texas corporation, or its nominee (the "Buyer"), or shortly after the transfer of the Property as specifically provided by

the Settlement Agreement, the Trustee is authorized to make any and all payments required by

the Settlement Agreement including, without limitation, the following:

     i.     To the Town for the "Town Payment" as defined in the Settlement Agreement, $1,640,000 shall be paid contemporaneous with the Sale Closing[1];

     ii.     To Durgaprasad Nagalla and Venkatesh Mohanraj, Trustees of MobileStreet for the "Use Modification Payment" as defined in the Settlement Agreement, $200,000 shall be paid within ten (10) days after the Closing Date;

     iii.     To MobileStreet for the "MobileStreet Maintenance Payment" as defined in the Settlement Agreement, $556,763 shall be paid within ten (10) days after the Closing Date;

     iv.     To Ferris for the "Ferris Payment" as defined in the Settlement Agreement, $100,000 shall be paid within ten (10) days after the Closing Date; and

     v.     To Lax for the "Lax Payment" as defined in the Settlement Agreement, $100,000 shall be paid within ten (10) days after the Closing Date.

**ORDERED** that, contemporaneous with the transfer of the Property to the Buyer, or

shortly after the transfer of the Property as specifically provided by the Settlement Agreement,

the Trustee is authorized to take any and all actions required by the Settlement Agreement to

dispose of pending litigation including, without limitation, the following:

     i.     Executing and filing a voluntary notice of dismissal with prejudice of the following civil action pending in the United States District Court for the District of Massachusetts against the Town, the members of the Select Board of the Town, and Peter Blaustein: Westborough SPE, LLC v. Town of Westborough, et al., U.S. Dist. Ct. (D. Mass.), Case No. 4:23-cv-12017; and

     ii.     Executing and filing the voluntary stipulation of dismissal with prejudice of the following adversary proceeding pending before this Court against the Town of Westborough: Jonathan R. Goldsmith, Chapter 7 Trustee of Westborough SPE LLC v. Town of Westborough, (Bankr. D. Mass.),

---

[1] As used in this Order, the term "Closing" shall have the meaning ascribed thereto in the PSA and the term "Closing Date" shall mean the date that the Closing occurs pursuant to the PSA

Adversary Proceeding No. 25-04003-CJP.

**ORDERED** that, the failure specifically to include or describe any particular provisions of the Settlement Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Settlement Agreement is approved in its entirety and that all actions required to be taken by the Trustee pursuant to the Settlement Agreement are hereby authorized.  Absent further order of the Court, the Court retains exclusive jurisdiction to enforce and interpret the Settlement Agreement to the fullest extent of applicable law.

By the Court,

Dated: December 24, 2025

_____
Christopher J. Panos
United States Bankruptcy Judge